# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

Fifth Division – Case Number 20-cv-_____

**Troy K. Scheffler,**
  Plaintiff,

**v.**

**County of Crow Wing,**

**Scott Goddard,**
In his individual capacity
for actions under color of law
as Crow Wing Sheriff,

**Joseph Meyer,**
In his individual capacity
for actions under color of law
as Crow Wing Sheriff's Department Captain,
  Defendants.

RECEIVED
BY MAIL

NOV 0 9 2020

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## COMPLAINT – TRIAL BY JURY DEMANDED

## INTRODUCTION

Following a copious amount of police misconduct within the City of Nisswa under the supervision, leadership, and tutelage of Chief Craig Taylor coupled with the highly publicly unpopular enforcement of the State's Towards Zero Deaths (TZD) on Highway 371 within Nisswa, there began political infighting between Nisswa Mayor Fred Heidmann, members of the council and Chief Taylor.


SCANNED
NOV 0 9 2020
U.S. DISTRICT COURT MPLS

From on-duty drunken officers to sexual escapades, political cover-ups ensued and finally the drama publicly coalesced on 08/29/2020 with the arrest on 371 of the Mayor for disorderly conduct and obstruction of justice by a Nisswa and Pequot Lakes Police Officer. (18-CR-20-2969 Crow Wing)

Shortly after, Chief Taylor, despite not being the charging agency, edited the bodycam footage of the arrest to ensure the Mayor appeared as poorly as possible to the public and then leaked the video to the media in hopes to unfairly and maliciously damage the Mayor before his upcoming election as he has been stacking the deck in the council with friends and fellow officers.

The media did what they do best, enflamed the public as Taylor had planned.  Taylor has been playing the media since at least 2013 where he hides behind data privacy laws while leaking private data to the media knowing it will be impossible for the public to have access to anything other than Taylor's narratives.

Knowing the video was edited by the Chief, a few politically ambitious council members such as John Ryan (a former Pequot Lakes Police Officer) who is running for the mayor's position, on 09/04/2020,

held a Special Council Meeting to address the Mayor's conduct during the arrest.

Plaintiff saw a notice on YouTube of the incident and instantly knew what was going on after seeing Nisswa and Pequot were involved on 371 as he had been warned 3 years ago when he moved to the area to be very cautious driving there.

Plaintiff then decided to exercise his 1st Amendment right and duty and attended a "Special" Nisswa City Council Meeting to address the mayor's conduct (The Hearing ignored the context and pretext of the incident itself).  Since then, this retaliation has been spread by Taylor to the Crow Wing County Sheriff's Department where Plaintiff has suffered further retaliation in Taylor's scorched earth crusade to rid any criticism of him by both Sheriff Goddard and Captain Meyer, Taylor's close personal friend.

Plaintiff now sues for claims of Defamation, 1st Amendment Retaliation, 4th Amendment Search, 18 U.S. Code § 2724-Drivers Privacy Protection Act (DPPA), MN Government Data Practices Act (MNGDPA), defamation, and Intrusion Upon Seclusion.

## INDIVIDUALS AND PARTIES

1.    Plaintiff Troy K. Scheffler (Scheffler) is an adult man domiciled at 26359 Shandy Trail, Merrifield, MN 56465.

2.    The County of Crow Wing (Crow Wing) is a Minnesota County having a county seat located in Brainerd, MN with their administrative offices as 326 Laurel St, Brainerd, MN 56401.

3.    Scott Goddard (Goddard) is a Minnesota licensed peace officer employed as the Sheriff of Crow Wing County.

4.    Joseph Meyer (Meyer) is a Minnesota licensed peace officer employed by the County of Crow Wing as a Sheriff's Department Captain.

5.    Scheffler sues Goddard and Meyer in their individual capacities for actions under color of law, as set forth below.

## JURISDICTION AND VENUE

6.    Scheffler states claims that constitute federal questions under 28 U.S.C. §1331 and 18 U.S. Code § 2724.

7.    Scheffler states supplemental claims under Minnesota law under 28 U.S.C. §1367.

8.    Mr. Scheffler lays venue and this division in accordance with 28 U.S.C. §1391 and LR D. Minn. 83.11 because the substantial number of events giving rise to this lawsuit took place in Crow Wing County, Minnesota.

## FACTS

9.    On 03/05/2019, Plaintiff emailed Goddard.

10.    In said email, Plaintiff warned the Goddard that it is inappropriate for Deputies to be using private driveways to exercise speed traps and also using lanes of traffic obstructing traffic to do the same.

11.    Plaintiff noticed Goddard that deputies were recently shining flashlights into his home going outside the bounds of reasonable efforts of process service.

12.    Plaintiff noticed Goddard that a deputy in frustration during civil process service harassed Plaintiff on his cell phone by calling the number numerous times in quick sequence calling from 218-290-5383.

13.    Plaintiff noticed Goddard that one of his Deputies had been tailgating him for quite some distance in the Merrifield area until the

Deputy decided to pass at a high rate of speed to find out and barely avoid an oncoming truck he was unable to see considering he was following Plaintiff too close.

14.   Said deputy was not traveling with emergency lights nor heading to an emergency.

15.   Plaintiff notified Goddard that Plaintiff had witnessed a deputy within the Courthouse swearing around small children.

16.   Goddard never responded to the email but a DVD of his tailgating Deputy did arrive via USPS.

17.   On 11/02/2019, Plaintiff was noticed by a friend, John Hoyt, that while letting Plaintiff's dog out while Plaintiff was out of town that he noticed a deputy parked immediately behind him blocking him in the garage.

18.   The Deputy grilled Hoyt insinuating Hoyt was Plaintiff.

19.   The Deputy did not believe Hoyt, but Hoyt insisted he need to go to work regardless.

20.   The Deputy continued to refer to Hoyt as "Troy" apparently with expectation that he could prove Hoyt was Plaintiff if he slipped up.

21.    While continuing to block Hoyt's vehicle in the garage, the Deputy returned to his vehicle and continued to refuse to allow Hoyt to leave until he ran his license plate while parked in a private garage with no permissible purpose.

22.    On 11/03/2019, Plaintiff noticed Goddard via email of this incident.

23.    In said email, Plaintiff made and MNGDPA demand for records states as: "Please promptly release the name of the deputy who arrived at my property at approximately 2:40PM 11/02/2019. I also want the vehicle number, any dispatch communications with regard to this "process service", interaction or otherwise, any other recorded communication made by this deputy around this the time frame between 2pm-3pm. This of course would include any video and audio from the squad, body cam, or radio microphone; any written record made concerning this incident. OH AND MOST IMPORTANTLY, WHY HE BLOCKED SOMEONE FROM LEAVING A GARAGE WHILE HE RAN A LICENCE PLATE. Obviously, I want to see the MDT (or modern equivalent) data including license plate runs etc;

written notes by the officer; EVERYTHING. While you're at it, you may as well disclose whoever paid for the service to unleash your deputies and any records of prior service (Including times and deputies coming to my address) for the past 2 years.

If in fact your deputy ran a plate at this time, could you explain the justification with regard to the DPPA? I could follow the wide latitude that courts have given the police for whatever reason while on a public road, but this was a vehicle inside a garage of a PRIVATE residence..."

24.     Plaintiff asked if the DPPA provided the Deputy with any permissible purpose for running a license plate inside a private garage on private property.

25.     Plaintiff noticed Goddard that deputies were arriving at his home pounding like maniacs on his front door yelling "Sheriff's Department" as if they were going to raid Plaintiff's home.

26.     Plaintiff was terrified during these numerous occurrences.

27.     The above referenced MNGDPA demand was never responded to by Goddard as Responsible Authority designee.

28.   Also on 11/03/2019, Plaintiff emailed Goddard with an MNGDPA demand to disclose all records relating to the policy of the banning of all electronic equipment in the courthouse.

29.   Goddard never responded.

30.   On or about 08/24/2020, Plaintiff met with Crow Wing Sheriff's Dave Fischer to discuss the inevitable budget crisis and government at large hysterical response to Covid-19 which caused the budget crisis.

31.   Plaintiff expressed concern that the economic crisis created by the government leading to countless people losing employment and businesses would affect their ability to pay mortgages and property taxes that Crow Wing is already secretly discussing raising significantly in 2021.

32.   Plaintiff inquired if the Sheriff intended to throw the very constituents that voted for him off their land.

33.   Fischer responded that it was "state law"...

34.   Plaintiff inquired as to how the Sheriff intended on having the deputies to cover the inevitable civil unrest during an economic collapse.

· 9 ·

35.    Fischer responded that the Sheriff would increase the budget and was seeking numerous options with regard to finding more law enforcement with reserves and more deputies.

36.    Thoroughly terrified by the Sheriff's intention to hire more deputies while demanding more tax money to hire more deputies to evict people from their land if they fail to pay more tax money due to a problem the county created and otherwise acquiesced to, Plaintiff was dissatisfied.

37.    Fischer recommended to speak directly to Sheriff Goddard with regard to his concerns.

38.    Following numerous messages and numerous visits to the Sheriff's department of which Goddard was nowhere to be found and nobody had any idea where he was, Goddard finally telephoned Plaintiff on 09/03/2020 as he finally conceded he wasn't going to be able to dodge Plaintiff.

39.    During said conversation, Plaintiff and Goddard agreed to meet in person with Plaintiff on 09/08/2020.

40.   On or about 09/03/2020, Plaintiff became privy by social media notification of an incident which occurred on 08/29/2020 which the then Mayor of Nisswa Fred Heidmann was arrested for disorderly conduct and obstruction after chiding one of his officers for involving himself in a traffic stop outside Nisswa.

41.   Following this incident, the Chief of Nisswa Craig Taylor released intentionally edited bodycam footage to paint the mayor in the worse light and leaked it to the media.

42.   On 09/04/2020 at 4PM, Nisswa held a special council meeting to discuss Heidmann's conduct from the arrest; Gary Johnson being mayor pro tem.

43.   Upon approaching city hall, Plaintiff noticed approximately 15 uniformed officers from Pequot Lakes, Nisswa, State Patrol, Lake Shore, Cross Lake, and the Crow Wing Sheriff all using city vehicles and equipment outside their jurisdictions.

44.   Plaintiff arrived to the podium to speak to the council at 38:50 of their video posted on the Nisswa City Page.

https://www.youtube.com/watch?v=zvxgdrFYDKY&t=2580s

45.   Plaintiff accused the council and police of using this to their political advantage and in the dog and pony show of a council meeting that all the officers armed and uniformed outside their jurisdiction while on duty was not only an inexcusable use of force by executive branch officials dogpiling on a legislative official, but was an extreme misuse of taxpayer funds as those municipalities expect their police to patrol their communities.

46.   Plaintiff directly called out all the on-duty officers wasting taxpayer funds being at the council meeting purely to impose, meddle and show force against the mayor while leaving their jurisdictions unprotected.

47.   Immediately after Plaintiff left the council chambers, Taylor took the microphone and claimed that "only one officer is on duty" out of the approximately 15 present uniformed officers.  This was a wanton lie as Pequot Lakes themselves had at least 2 officers on duty along with the Chief of Pequot Lakes and Nisswa had 2 officers on duty (Szymanski and Thompson).

48.   Shortly thereafter, Captain Joseph Meyer (Meyer) approached the podium stating that he works for Crow Wing County Sheriff.  He stated

that he appeared not as a citizen, but rather a representative of the Sheriff.  He demanded Heidmann to resign.

49.    Within minutes of the conclusion of the meeting, at 05:17PM, Taylor went to his office and used equipment and his publicly untrusted security clearance to unlawfully, illegally, and criminally access Plaintiff's personal data in violation of the DPPA.

50.    That this access was made with willful disregard of the law, maliciously, wantonly, and in retaliation to Plaintiff's Constitutionally protected 1st Amendment rights expressed by Plaintiff at the 09/04/2020 council meeting.

51.    On or about 09/05/2020, Plaintiff met with Crow Wing Sheriff Detective DJ Downie.

52.    Plaintiff reported a crime in which an attorney filed a fraudulent affidavit with the Court Administrator to extort money from Plaintiff.

53.    Despite Downie assuring Plaintiff he would receive a return call, to date he has not.

54.    On 09/05/2020, Plaintiff sent Downie more information which Downie ignored and never returned the message.

55.   Under information and belief this is due to retaliation from Plaintiff speaking at the 09/04/2020 council meeting.

56.   That on 09/07/2020 at 6:59pm, Goddard unlawfully accessed Plaintiff's personal and private protected data in violation of the DPPA and in retaliation to Plaintiff exercising his 1st Amendment Rights on 09/04/2020.

57.   That on 09/08/2020, Plaintiff received a phone call from "Haley" from the Crow Wing County Sheriff's Department to notify Plaintiff that Sheriff Scott Goddard was cancelling that day's meeting that Plaintiff had scheduled with him prior to the 09/04/2020 council meeting and Goddard would be calling back.

58.   That Goddard initially refused to call Plaintiff back as "Haley" promised.

59.   That only after over a week passed and numerous visits to the Sheriff's Department where each employee was never aware of where Goddard was other than not at the department and numerous phone calls did Goddard muster the courage, decency, and courtesy to contact Plaintiff on 09/16/2020 as he realized Plaintiff was not going to easily be

deterred from standing up for Plaintiff's fellow citizens and demanding answers from an elected official.

60.   That in this conversation, without knowing at all what Plaintiff initially scheduled the meeting for, Goddard informed Plaintiff that he would not be meeting with him because they would not "see eye to eye".

61.   That Goddard informed Plaintiff that this was due to him retaliating against Plaintiff exercising his 1st Amendment at the 09/04/2020 council meeting.

62.   Goddard's attitude was also due to defamatory comments Taylor made to his friend Capt. Joseph Meyer of the Crow Wing Sheriff's Department who in turn spread them to Goddard.

63.   Plaintiff later discovered Goddard and Crow Wing County too had trampled on Plaintiff's privacy by willfully, wantonly, maliciously, and unlawfully violating the DPPA on 09/07/2020 by intruding upon Plaintiff's private data.

64.   This data included, but was not limited to, Plaintiff's photograph, driver identification number, name, address, and disability status.

65.     That on 10/13/2020, while attending the Crow Wing County Board meeting, Plaintiff attempted to notify the board and more importantly the public with regard to the unlawful data access made by the Sheriff.

66.     That the County Chair cut Plaintiff off at 2 minutes and denied Plaintiff's request for leave to speak one more minute.

67.     That following this denial, the Chair freely allowed others to freely speak beyond the 2-minute mark without leave.

68.     That this unequal treatment violates the 1st and 14th Amendment of the United States Constitution.

69.     That while returning to the public seating area of the meeting, Plaintiff was unlawfully threatened by Crow Wing Sheriff Captain Joseph Meyer, close friend of Taylor.

70.     That during the board meeting Meyer threatened to remove Plaintiff from the meeting without cause or lawful authority.

71.     Following the meeting outside the board room while confronting Meyer concerning his threat, in front of Dan Ryan, Meyer claimed that everyone (police) knows that Plaintiff has an "agenda" and that Plaintiff

has been travelling through Pequot Lakes and Nisswa giving the "finger" to officers for "months" and had "proof".

72.   This statement is untrue and defamatory.

73.   This continued falsehood serves only to harm Plaintiff's reputation and lower the standing of Plaintiff within the community.

74.   That this falsehood spread by Meyer instills great anxiety that others, as many already have, in the law enforcement community will retaliate against Plaintiff due to reliance on this falsehood.

75.   That Meyer intended to spread this falsehood to lower Plaintiff's standing in the community and provoke retaliation.

76.   That in the same conversation, Ryan claimed that he had not responded to an email Plaintiff sent to him on 09/11/2020 to save taxpayers money over an extortion racket the County was employing as described in Scheffler v Crow Wing 18-CO-20-195 because on one hand he thought he did and on the other hand he didn't because he was busy...

77.   That Ryan promised to follow up with Plaintiff concerning that case within a day, he of course didn't.

78.   On the same date of 10/13/2020, Plaintiff made an MNGDPA demand upon Responsible Authority Designee Goddard.

79.   Said demand, included, "Meyer claimed he has "proof" that I was driving around Pequot and Nisswa "for months" harassing and "giving the finger" to officers. That sir, begs a data demand as to showing me that "proof". So, please cough it up. If the Sheriff's office can't, well that seems to be a matter of defamation and I fully intend on pursuing that claim. I want disclosed any reports, memos or anything of the like with regard to these claims. ANYTHING AND EVERYTHING.

I also demand any bolo or roll call reports issued concerning me. I also want disclosed the alleged officers, apparently from Nisswa and Pequot, which provided "proof" or even a claim of months of flipping the bird. I also want disclosed any of your employees that have further spread this gossip and those that received it. Lol, the country is burning to the ground and you're entering an alleged budget crisis and this teenage gossip is what you guys spend your time with. Pathetic. The greatest enemy of police are themselves."

80.   To date, Goddard as usual has not complied or even responded to this MNGDPA demand as required by law.

81.    That do date, Crow Wing County, City Attorney Don Ryan, Sheriff Goddard and Capt Joseph Meyer has failed to notify the Minnesota Bureau of Criminal Apprehension with regard to the unlawful DPPA violation as required under the "State of Minnesota Joint Powers Agreement".

82.    That Crow Wing county has been sued on multiple occasions with regard to intentional violations of the DPPA including *Myers v Aitkin County, et al.* (US Dist Crt. 14·473, 2014) in which Crow Wing paid $65,000 in damages and attorney fees and agreed to DPPA "Training" which was obviously lip service they never intended on following.

83.    On 10/15/2020, Plaintiff confronted Ryan at his office.

84.    As usual, Ryan concocted an excuse as to why he failed to live up to his promise to timely follow up with Plaintiff.

85.    That in said conversation, Plaintiff demanded access under the MNGDPA to view the bodycam footage, citation, and any other data that was already released to the media concerning the Heidmann arrest. 18·CR·20·2969.

86.   Ryan initially played naïve and admitted that not only was he aware that the bodycam was leaked, but also that there was a conflict with his office as prosecutor handling the Heidmann case as he is the brother of the other Ryan trying to unseat Heidmann.

87.   Ryan claimed that he would respond to the MNGDPA demand if Plaintiff put the demand in writing.

88.   On 10/15/2020, Plaintiff sent an MNGDPA demand to Ryan as Responsible Authority Designee and also sent the demand to the Brainerd Responsible Authority, Pequot Lakes Responsible Authority, Nisswa Responsible Authority, and Goddard as Responsible authority designee to release the data as required by law.

89.   Said demand included, "I AM DEMANDING UNDER THE MNGDPA THE FOLLOWING DATA FROM EACH RESPONSIBLE AUTHORITY ADDRESSED IN THIS EMAIL:

ANY AND ALL NARRATIVES AND NOTES INCLUDING INCIDENT REPORTS ETC WITH REGARD TO THE ARREST OF MR. HEIDMANN.

I WANT TO SEE THE FULL BODY CAM OF THE ENTIRE STOP
AND ALSO NOW WANT THE BODYCAM FOOTAGE OF THE
OFFICERS INVOLVED ENTIRE SHIFT. I THINK IT WOULD BE
INTERESTING TO SEE WHAT A FULL TZD SHIFT LOOKS LIKE
AND OF COURSE THE NONSENSE DISCUSSED DURING AND
FOLLOWING THE ARREST.

I WANT TO ALSO HAVE RELEASED ANY AND ALL OTHER
RECORDINGS OF THE INCIDENT PAPER, VIDEO TAPE,
HIEROGLYPHS, SMOKE SIGNALS, ETC. WHICH WOULD OF
COURSE INCLUDE ANY AND ALL SQUAD FOOTAGE OF THE
ARREST AND WELL I NOW WANT IT OF THE ENTIRE SHIFT OF
THE OFFICERS."

90.   To date, Ryan refused to respond or follow releasing the data
disclosures as required by law.

91.   To date, despite acknowledging a conflict, Ryan has not
transferred the Heidmann case out of his office.

92.   That in fact the current Prosecutor in the Heidmann matter, Crow
Wing County Attorney Don Ryan, who is also refusing to release the

entire footage or even the police narrative report of the matter to the public is the brother of the Nisswa City Council mayoral candidate John Ryan (a former Pequot Lakes Police Officer).

93.   That the council, Taylor, the Ryan's, along with select Nisswa employees are actively, unlawfully, and unfairly attempting a coup to remove the mayor through smear campaigns, cover-ups, and election interference.

94.   That Ryan's actions are an unsubtle and blatant attempt at election meddling.

95.   That on 10/21/2020, Plaintiff asked mayoral hopeful (Now recently elected Mayor) and brother of Don Ryan, John Ryan, why his brother is continuing to hold the position of prosecutor in the Heidmann case.

96.   John Ryan feigned ignorance that his brother was prosecuting the case...

97.   On 10/27/2020, Plaintiff noticed the Crow Wing Board during a regular meeting of the continued malfeasance of the Sheriff's Department.

98.    That upon interview the same day by the Brainerd Dispatch, Goddard shamelessly made the statement, "Anybody that makes a data request, we certainly work to make sure it's fulfilled".

99.    That Goddard has no interest in transparency or public concerns.

100.    After the board meeting on 10/27/2020, Plaintiff received an email from Don Ryan expressing no interest in a responsible use of tax money in a disastrous budget crisis and instead noticed his intent to use his "busy schedule" to take a $19.60 tax extortion case to court (18-CO-20-195) clearly in retaliation to Plaintiff again exercising his 1st amendment at that day's board meeting.

101.    That Meyer has a history of publicly supporting the tyranny and misconduct of Nisswa Police Chief Craig Taylor by representing the County of Crow Wing in his official capacity.

102.    On 08/21/2013, Meyer disingenuously came to the aid of Taylor during a Nisswa council session. https://www.youtube.com/watch?v=DaOxzYy2pMs&t=56s @1:30

103.    In a conspiratorial move by Taylor and Meyer to stack the Nisswa Council, Councilman Hodgson was replaced in 2013 by appointment of

Crow Wing Sheriff Capt. Joseph Meyer as councilmember and was assigned as "liaison" to Taylor; this while the council was fully aware the two were close personal friends.

104.  That despite numerous warnings of legal action, the defendants continue to disregard the law and Plaintiff's rights.

105.  That Plaintiff suffers from Post-Traumatic Stress Disorder, Insomnia, and Anxiety with Panic Disorder which were severely exacerbated by the actions of the defendants.

106.  Plaintiff suffered severe emotional distress by the actions of Crow Wing, Goddard, and Meyer.

107.  Plaintiff realleges and reasserts each and every averment and statement of fact above, into each and every claim set forth below.

### CLAIM I: The Drivers Privacy Protection Act (18 U.S.C. § 2724)

108.  Defendant Goddard in his individual capacity acting under color of law and County of Crow Wing, acting under color of law, in fact violated protections afforded to Plaintiff under the DPPA.

109.  That on 09/07/2020, at 7:59PM, Goddard and Crow Wing did unlawfully use their security access with the MN BCA and DPS(DVS) to

invade Plaintiff's personal information data held by his Minnesota Motor Vehicle records

110.  This data included, but was not limited to, Plaintiff's photograph, driver identification number, name, address, and disability status.

111.  That Goddard did in fact unlawfully access FBI, NCIC, and CJIS restricted data centers by using a name search.

112.  That said defendants willfully obtained, accessed, acquired, and misused the data for an improper purpose.

113.  That Plaintiff did not consent to these searches.

114.  That Goddard shared the unlawfully accessed data to others.

115.  That Crow Wing County (and Crow Wing County) has previously been sued a number of times for unlawful access under the DPPA.

116.  That Goddard accessed the data in retaliation to Plaintiff exercising his Constitutionally protected rights specifically enshrined in the 1st Amendment.

117.  That the accessing this data is a crime.

118. That Crow Wing, its County Attorney, and Board have been complicit in this criminal act and has to date failed to report the unlawful access to the BCA as agreed to and instructed by the "Joint Powers Agreement"

119. That said agreement states in relevant part, "When Agency becomes aware that a violation has occurred, Agency will inform BCA subject to any restrictions in applicable law." (State of Minnesota Joint Powers Agreement Par. 9.1)

120. That Goddard and Crow Wing show a deliberate disregard to the rights and privacy of the public and specifically Plaintiff.

121. That Goddard and Crow Wing have a consistent disregard towards policy and discipline of violation of policy making city policy meaningless.

122. Plaintiff is terrified that now Goddard and other police officers have his private data that they will continue to retaliate against him.

123. Plaintiff is terrified Goddard was, has, and is going to use the data he breached to stalk and harass Plaintiff.

124. Plaintiff seeks at least $2,500 in liquidated damages, but in excess for actual damages.

125. Defendants Taylor and Nisswa inflicted damages upon the Plaintiff in excess of $75,000.00, or a sum that the jury must determine.

126. Plaintiff suffered extreme emotional distress.

127. Plaintiff seeks punitive damages.

128. Plaintiff seeks damages from Goddard and Crow Wing jointly and severally with regard to this claim.

## CLAIM II: COMMON LAW INVASION OF PRIVACY/INTRUSION UPON SECLUSION

129. Plaintiff's private and restricted data was intentionally and without authorization was invaded by Goddard, in his individual capacity, while acting under color of law.

130. That Goddard without any permissible purpose invaded Plaintiff's private data including, but not limited to Plaintiff's photograph, driver identification number, name, address, and disability status.

131. That Goddard unlawfully accessed Plaintiff's private data held within FBI restricted databases.

132. That Plaintiff did not consent to these searches.

133. That a Sheriff accessing Plaintiff's data which includes what he drives and where he lives and in retaliation to Plaintiff exercising his 1st Amendment rights is highly offensive.

134. The private data unlawfully gained was private data secured by security clearance.

135. Plaintiff seeks punitive damages.

136. Plaintiff seeks damages for extreme emotional distress.

137. Plaintiff Defendants Goddard and Crow Wing inflicted damages upon the Plaintiff in excess of $75,000.00, or a sum that the jury must determine.

138. Plaintiff seeks damages from Goddard with regard to this claim.

## CLAIM III: COMMON LAW DEFAMATION

139. Defendant Meyer did spread false accusations that Plaintiff was travelling around both Nisswa and Pequot Lakes "for months" giving the middle finger to police officers.

140. Defendant Meyer spread this and other untruths verbally to others including but not limited to, Don Ryan and Goddard.

· 28 ·

141.  That these false and defamatory statements were fully intended by Meyer to smear and harm Plaintiff's reputation and to lower him in the estimation of the community and its police.

142.  That Meyer's intent was to instill hostility of the public against Plaintiff as he has repeatedly done to others under false pretenses.

143.  Defendant Meyer inflicted damages upon the Plaintiff in excess of $75,000.00, or a sum that the jury must determine.

144.  That Plaintiff seeks Punitive damages.

145.  Plaintiff seeks damages from Meyer in his individual capacity with regard to this claim.

## CLAIM IV: 1ST AMENDMENT RETALIATION (42 U.S.C. § 1983)

146.  Defendants Goddard, in his individual capacity, and Crow Wing, under color of law, acted in retaliation to Plaintiff exercising his 1st Amendment Rights.

147.  At all times in this instant suit, Plaintiff has acted in lawful and protected conduct.

148. That speaking at Nisswa Council meetings during the public forum is protected conduct under the 1st Amendment.

149. That all claims made in this instant suit had the impetus of retaliation towards Plaintiff speaking at Nisswa Council Meetings during public forum.

150. That the retaliation has manifested in Goddard and Crow Wing accessing Plaintiff's private data, Sheriff Detectives failing to follow through with crimes reported by Plaintiff, Meyer threatening Plaintiff at council meeting, Crow Wing Board denying Plaintiff equal time to speak as they did others, defamation, cancelling of scheduled meetings to express concerns and grievances to the Sheriff, disregard by the County Attorney and unlawful conduct with regard to efficient resolution of previously fled suit, and Goddard instructing his officers to treat Plaintiff in a manner more poorly than if Plaintiff did not exercise his 1st Amendment.

151. That such retaliatory conduct in individual instances and taken as a whole would serve to deter a person of ordinary firmness from continuing to exercise their Constitutional Rights.

152. That such conduct serves to deter the free exercise of Constitutional rights.

153. Defendant Goddard and Crow Wing inflicted damages upon the Plaintiff in excess of $75,000.00, or a sum that the jury must determine.

154. Plaintiff seeks punitive damages.

155. Plaintiff seeks damages jointly and severally from Meyer and Goddard with regard to this claim.

## CLAIM V: MNGDPA (MN Stat 13.08)

156. Defendant Crow Wing has unlawfully withheld material data in Plaintiff's peace of mind with regard to the circumstances surrounding the Heidmann arrest and has prohibited Plaintiff's ability to express the data to the public and in grievance to the City of Nisswa otherwise interfering in Plaintiff's civic duty to remain vigilant with his government and his social contract with his fellow citizens.

157. That this unlawfully withheld data is in regards to Don Ryan using his official position to frustrate transparency and to manipulate the Nisswa mayoral election in favor of his brother.

158.  That Goddard and Don Ryan are the responsible authority designees for their respective departments.

159.  On 11/03/2019, 11/03/2019, 10/13/2020, and 10/15/2020 Plaintiff made MNGDPA demands which were unlawfully not responded to.

160.  To date, Crow Wing has not released a shred of data demanded.

161.  Crow Wing County Court records concerning State v. Heidmann Case No. 18-CR-20-2969 clearly show that charges were filed 09/02/2020.

162.  That Plaintiff has been thwarted and stalled by Councilman John Ryan's brother Crow Wing County Attorney Don Ryan in requests made directly to his office as prosecutor of the case.

163.  Don Ryan has assured Plaintiff numerous times he would respond to the demand and not once exercised the courtesy and legal obligation to respond.

164.  That Crow Wing and Goddard have not responded in compliance with MN Stat. 13.03, Subd. 3.

165.  That Taylor has already released a material portion of the bodycam footage Plaintiff demanded making the data de facto public and not

protected as "investigatory data" to maintain the integrity of or jeopardize a prosecution.

166. That the police report was already released to the media prior to September 1st, 2020.

167. That all data demanded by Plaintiff as applied under MN Stat. 13.82, subd. 2,3, and 6 is unambiguously public data which was not released by Crow Wing.

168. That Nisswa has record of the Citation issued to Heidmann which otherwise is not protected data as it was evidence presented to the Court on 09/02/2020.

169. That under information and belief that the Crow Wing County Attorney, its council, and Taylor are maliciously and unlawfully withholding and concealing the data so as to interfere with Heidmann's mayoral election campaign.

170. Plaintiff seeks compensatory damages.

171. Plaintiff seeks exemplary damages in the amount of $15,000 for each violation.

172.  Plaintiff seeks mandamus relief in mandating the release of the above-mentioned data per Minn. Stat. §13.08 subd. 4 and the release of the otherwise public data.

173.  Plaintiff seeks nominal, special, general, and exemplary damages from Crow Wing with regard to this claim.

## CLAIM VI: 4th AMENDMENT UNLAWFUL SEARCH (42 U.S.C. § 1983)

174.  Defendant Goddard, in his individual capacity, acting under color of law, unreasonably searched Plaintiff's private and protected data from the outset, without warrant, probable cause, arguable probable cause, exigent circumstances, or any other lawful exception to the warrant requirement.

175.  Defendant Goddard, under color of law, acted in retaliation to Plaintiff exercising his 1st Amendment Rights.

176.  At all times in this instant suit, Plaintiff has acted in lawful and protected conduct.

177.  That Goddard violated the DPPA and other data as addressed in Claim III by his unlawful search.

178.  That Plaintiff had committed no unlawful act and Goddard had no other reasonable purpose to search Plaintiff's private data.

179.  Defendant Goddard inflicted damages upon the Plaintiff in excess of $75,000.00, or a sum that the jury must determine.

180.  Plaintiff seeks punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

A.    Judgment against the Defendants jointly and severally;

B.    Compensatory damages against the Defendants, in excess of $75,000.00, or such sum as a jury may award;

C.    Punitive damages against the Defendants, in excess of $75,000.00, or such sum as a jury may award;

D.    Reasonable attorney fees;

E.    Costs and disbursements;

F.    Preverdict interest;

G.     Mandamus Relief;

H.     Prejudgment interest;

I.     Trial by jury; and

J.     All other legal, declaratory, or equitable relief appropriate under

the circumstances.

## DECLARATION

In accordance with 28 U.S.C. §1746, in Crow Wing County, Minnesota, I,

Troy K. Scheffler, declare under penalty of perjury, that the above-stated

averments of fact, after diligent inquiry, are true to the best of my present

knowledge, and that identification of discrete claims and citations to

sources of law are furnished to me for ease of identification of each of my

claims.

Date: 11/06/2020

Troy K. Scheffler
26359 Shandy Trl
Merrifield, MN 56465
763-225-7702
troyscheffler@gmail.com